# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTONIO G REYES, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | Case No.: **3:09-cv-01035-JPG-PMF** |
| | ) | |
| MICHAEL P. RANDLE, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court is the defendants' (Doc. 34) motion for summary judgment and the plaintiff's (Doc. 51) response thereto. For the following reasons, it is recommended that the (Doc. 34) motion for summary judgment be **granted, in part, and denied, in part.**

### I.        PROCEDURAL BACKGROUND

The plaintiff, Antonio G. Reyes, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 on December 14, 2009 against ten defendant prison officials employed by the Illinois Department of Corrections ("IDOC"). On July 2, 2010, the Court screened the complaint pursuant to its authority provided by 28 U.S.C. § 1915A and summarily dismissed seven defendants from this case. *See* Doc. 5. The Court found that Reyes stated a First Amendment retaliation claim against defendants Roger E. Walker, Melody Ford, and K. Schorn. *See id.* Those remaining defendants filed the instant (Doc. 34) motion for summary judgment on May 31, 2011.[1]

---

[1] The relevant facts of this case are summarized in the grievances described in Part II.A.2, *infra*.

## II.     DISCUSSION

In the (Doc. 34) motion for summary judgment, the defendants set out seven separate grounds for why they are entitled to summary judgment: 1) Reyes' failure to exhaust administrative remedies; 2) Reyes' failure to file this lawsuit within the applicable statute of limitations period; 3) Reyes will not be able to support his claims that he was denied access to the courts; 4) the defendants did not retaliate against Reyes; 5) the defendants are shielded from being sued in their official capacities by the Eleventh Amendment; 6) defendants Walker and Ford were not personally involved in any alleged violation of Reyes' constitutional rights; and 7) the defendants are entitled to qualified immunity. *See* Doc. 35.   Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.  242, 255 (1986); *Spath*, 211 F.3d at 396.

### A.  Exhaustion of Administrative Remedies Standard

Pursuant to the Prison Litigation Reform Act ("PLRA"), all prison inmates bringing an action under 42 U.S.C. § 1983 with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. *See* 42 U.S.C. § 1997e(a); *see also Perez v. Wisconsin Dept. of Corrections*, 182 F.3d 532, 535 (7th Cir. 1999); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008).  The Seventh Circuit has taken a strict compliance approach to exhaustion, requiring inmates to follow all grievance rules established by the correctional authority. *See Dole v. Chandler*, 438 F.3d 804,

809 (7th Cir. 2006).  Finally, "[e]xhaustion is an affirmative defense, and the burden of proof is on the defendants."*Id.* (citing *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004)).

The IDOC has a three-step process that prisoners under their control are required to follow in order to exhaust administrative remedies.  For the first step, the prisoner must first attempt to resolve the dispute through his or her grievance counselor. *See* 20 Ill.Admin.Code § 504.810.  At step two, if the prisoner is unable to resolve the dispute through his or her counselor, the prisoner may file a written grievance with the Grievance Officer within sixty (60) days of discovery of the dispute. *See id*.  The grievance must contain factual details regarding each aspect of the dispute, including "what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the [dispute]." *Id*.  The Grievance Officer then considers the grievance and reports his or her findings and recommendations in writing to the Chief Administrative Officer. *See* 20 Ill.Admin.Code § 504.830.  The Chief Administrative Officer typically advises the prisoner of the decision at step two in writing within two months after receipt of the written grievance. *See id.*  The third and final step of the exhaustion process is an appeal to the Administrative Review Board ("ARB").  After receiving a response from the Chief Administrative Officer at step two, the prisoner has thirty (30) days from the date of the response to appeal to the ARB. *See* 20 Ill.Admin.Code § 504.850.  The ARB typically makes a final determination within six (6) months after receipt of the appealed grievance. *See id*.  With regard to prisoners under the control of the IDOC, administrative remedies may be deemed fully exhausted after the prisoner receives a copy of the ARB's decision at step three.

When there are factual issues relating to the exhaustion defense, the Court must resolve those issues before the merits of the substantive claims may be considered. *See Pavey*, 544 F.3d at 740-42.  If the Court finds that the prisoner exhausted his administrative remedies, "the case

will proceed to pretrial discovery, and if necessary a trial, on the merits." *See id*. at 742. If the Court finds that the prisoner did not exhaust his administrative remedies, the Court determines whether:

(a) the plaintiff has unexhausted remedies, and so he must go back and exhaust;

(b) or, although he has no unexhausted remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), in which event he will be allowed to go back and exhaust; or

(c) the failure to exhaust was the prisoner's fault, in which event the case is over.

*Id*.

### 1. <u>Exhaustion as to Defendants Ford and Walker</u>

The defendants argue that Reyes failed to exhaust his administrative remedies as to defendants Ford and Walker because there is no record of any grievance against them. In support, defendants Ford and Walker point to the seven grievances that the plaintiff attached to his complaint. Not a single one of those grievances mention defendants Ford or Walker. *See* Doc. 1-1. Additionally, defendants Ford and Walker submit the affidavit of Brian Fairchild, Chairperson with the Office of Inmate Issues for the IDOC. Doc. 35-1 at 62-64. In the affidavit, Chairperson Fairchild attests that a thorough of the ARB records was conducted, and there is no indication that Reyes exhausted his administrative remedies regarding allegations that defendants Ford and Walker: 1) violated his constitutional right to meaningful access to the Courts; or 2) retaliated against Reyes for filing grievances. *See id*. at 63. With this evidence, defendants Ford and Walker maintain that they are entitled to summary judgment.

Reyes responds to defendant Ford and Walker's argument by acknowledging that defendants Ford and Walker are correct that he has not exhausted administrative remedies against them. *See* Doc. 51 at 2. Instead, Reyes makes a statutory interpretation argument

asserting that administrative remedies are effectively "unavailable" as to defendants Ford and Walker due to their respective capacities as ARB Chairperson and IDOC Director. At the crux of Reyes' statutory argument is a portion of a section of the Unified Code of Corrections, 730 ILCS § 5/1-1-1 *et seq.*, that provides that "[the administrative grievance resolution] procedure shall provide for the review of grievances by a person or persons other than the person or persons directly responsible for the conditions or actions against which the grievance is made." 730 ILCS § 5/3-8-8(a). Reyes then directs the Court to consider the relevant administrative regulations regarding review of grievances by the IDOC Director. Chapter 20, Section 504.805, of the Illinois Administrative Code provides that the IDOC Director may delegate his duties, except when the regulations specifically provide that the IDOC Director shall personally perform the duties. *See* 20 Ill. Admin.Code § 504.805. Finally, Chapter 20, Section 504.850 provides that "[t]he [IDOC] Director shall review the grievance and the responses [at step two] and shall determine whether the grievance requires a hearing before the Administrative Review Board." *See id*. § 504.850. Because of the structure of these provisions, Reyes asserts that any grievance naming the IDOC Director "cannot be legally reviewed." *See* Doc. 51 at 6. According to Reyes, the structure leaves administrative remedies unavailable against the IDOC Director. Reyes also attempts to lump in the ARB Chairperson into his argument but provides no specific, textual support for his position as to the ARB Chairperson.

The Court does not find Reyes' statutory argument persuasive. Plainly, the statutory and administrative structure does not leave administrative remedies effectively unavailable against the IDOC Director or ARB Chairperson. Reyes' argument fails to take into consideration that if a grievance were to be filed directly against the IDOC Director or ARB Chairperson, they could simply recuse themselves from the proceedings. The statutory and administrative scheme does

not prohibit either of these individuals from delegating their duties to another prison official. *See id*. § 804.805(a). It is true that the Section 504.850(b) has a limiting effect on the scope of the permissible delegation provided by Section 504.805(a), but not to the extent that Reyes would like. *See id*. § 804.805(b). Section 504.805(b) only provides that "[n]o other individual may routinely perform duties whenever [the regulations] specifically [state] the [IDOC] Director … shall personally perform the duties." *See id*. Thus, even assuming that review of grievances is a duty that the regulations state that the IDOC Director shall personally perform, there is nothing in the statutory and administrative scheme preventing the occasional recusal and delegation of the duties by the IDOC Director when the IDOC Director is named in a grievance. Accordingly, Reyes' statutory argument must fail.

Furthermore, Reyes should be estopped from even arguing that administrative remedies are unavailable in any matter as to defendants Ford and Walker because he has not even taken the preliminary step of filing a grievance against these individuals. There is nothing in the Unified Code of Corrections and administrative regulations that would preclude a prisoner from filing a grievance against any prison official, irrespective of his or her title or level of authority. By his own admission, Reyes intentionally failed to take any type of administrative action towards defendants Ford and Walker. *See* Doc. 51 at 2. "Exhaustion is required even if the prisoner believes his efforts in securing relief will be futile," (*Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008) (citing *Booth v. Churner*, 532 U.S. 731, 741 n. 6 (2001)) "or if the administrative authority has no power to grant the requested relief" (*Id*. (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Dole v. Chandler*, 438 F.3d 804, 808-09 (7th Cir. 2006))).

There being no genuine issue of material fact for a hearing on the exhaustion of administrative remedies issue, it is recommended that the (Doc. 34) motion for summary

judgment be granted as to defendants Ford and Walker. It is further recommended that the (Doc. 34) motion for summary judgment be denied as moot as to defendants Ford and Walker on the remaining issues. Additionally, the law of this Circuit commands that the dismissal be with prejudice as to defendants Walker and Ford because the failure to exhaust was intentional. *See Pavey*, 544 F.3d at 742 (providing that where the failure to exhaust was the prisoner's fault, "the case is over"). As a result, the only remaining defendant in this action is defendant Schorn.

**2. Exhaustion as to Defendant Schorn**

Unlike defendants Ford and Walker, Reyes has exhausted his administrative remedies as to defendant Schorn. Reyes has attached three exhausted grievances naming defendant Schorn to the complaint. *See* Doc. 1-1. Reyes has attached other grievances to the complaint that complain, generally, of a conspiracy to retaliate against him. However, only three of the grievances allege personal involvement by defendant Schorn. *See* 42 U.S.C. § 1983; *see also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). The three exhausted grievances alleging personal involvement by defendant Schorn are summarized as follows:

1) Grievance dated October 1, 2007
   a. Nature of Allegations: On August 17, 2007, an inmate law clerk and defendant Schorn appeared at Reyes' cell front. Reyes stated he needed two photocopies ($2.60) for an upcoming deadline but was persuaded to request four photocopies ($5.20). On August 22, 2007, Reyes received a letter from the Clerk of the Circuit Court of Randolph County stating that he only needed to file two photocopies ($2.60). On September 7, 2007, Reyes received a pass to library and brought his information from the Clerk of Randolph County to share with library personnel. Before he was able to share this information, Reyes spoke to defendant Schorn's assistant and asked if he recalled the events of August 17, 2007. Defendant Schorn overheard the conversation and then exploded into a tirade. Defendant Schorn indicated that Reyes had enough money to afford the extra copies so he should not be complaining. Defendant Schorn continued to belittle Reyes and threatened to withhold

7

library services on future lockdowns for anything not involving a direct court ordered deadline.

b. Step One: Received by counselor 10/16/2007. Response by counselor on 10/22/2007.

c. Step Two: Filed 11/15/2007. Reviewed 1/04/2008 by Grievance Officer. Chief Administrative Officer Concurred 1/11/2008. Grievance denied.

d. Step Three: Notification of appeal 1/28/2008. Received by Office of Inmate Issues 2/4/2008. Appeal denied 4/16/2008.

2) Grievance dated November 9, 2007

a. Nature of Allegations: On September 2, 2007, Reyes wrote a letter to the library staff informing them of an impending court deadline of September 28, 2007 and requesting time in the library for research. On September 20, 2007, Reyes wrote a keycite request and gave it to an inmate law clerk named Shaun. Reyes asked Shaun to let defendant Schorn know that he had a brief due the very next week and that he needed to research the case for his brief. Shaun returned and stated that he informed defendant Schorn of his request, but defendant Schorn said that she would get to it whenever. On September 21, 2007, Reyes again asked Shaun to check on the status of his request. Shaun checked and told Reyes it was not done. On September 27, 2011, Reyes asked Shaun to again inform defendant Schorn that he had a deadline the next day and needed his request fulfilled. Shaun told Reyes that his request had still not been handled. Reyes spoke to an inmate law clerk named Larry later that same day, and Larry hinted that Ms. Schorn is not addressing Reyes' requests due to the fact that it is Reyes who is making the requests.

b. Step One: Received by counselor 11/15/2007. Response by counselor on 11/15/2007.

c. Step Two: Filed 12/14/2007. Reviewed 2/15/2008 by Grievance Officer. Chief Administrative Officer Concurred 2/22/2008. Grievance denied.

d. Step Three: Notification of appeal 4/6/2008. Received by Office of Inmate Issues 3/18/2008. Appeal denied 6/13/2008.

3) Grievance dated February 22, 2008

a. Nature of Allegations: On January 9, 2008, Reyes received a court order granting an extension of time to file a responsive pleading to January 15, 2008. Reyes notified the law library of the deadline and requested research materials to prepare his response. On January 14, 2008, defendant Schorn and an inmate law clerk came to Reyes' cell front and asked if had a court deadline and, if so, what he needed. Reyes responded that he did have a deadline, and he needed copies of a motion that he was preparing for the next day. On January 17, 2008, Reyes received a pass to pick up his motion. Reyes told the inmate law clerk that he had no use for the copies because his deadline expired two days ago. When the inmate clerk told Reyes that he should have informed him that he had a deadline, Reyes asked him if he recalled the conversation at his cell front on January 14, 2008 and whether or not they had received his request notifying them that he had a January 15,

2008 deadline. The inmate law clerk answered in the affirmative when Reyes specifically asked him whether or not they had received his written request. On January 19, 2008, Reyes received a court order dated January 17, 2008 dismissing his complaint.
   b. Received by counselor 3/3/2008. Response by counselor on 3/7/2008.
   c. Step Two: Filed 3/20/2008. Reviewed 6/6/2008 by Grievance Officer. Chief Administrative Officer Concurred 6/6/2008. Grievance denied.
   d. Step Three: Notification of appeal 6/13/2008. Received by Office of Inmate Issues 7/1/2008. Appeal denied 2/9/2009.

Doc. 1-1. Reyes may proceed to the case on the merits against defendant Schorn with the allegations contained in the aforementioned exhausted grievances. Accordingly, it is recommended that the (Doc. 34) motion for summary judgment be denied as to defendant Schorn on the exhaustion of administrative remedies issue.

### B. Statute of Limitations

Next, the defendants claim that they are entitled to summary judgment because Reyes' claims are barred by the applicable statute of limitations. "A Section 1983 action is subject to the statute of limitations governing personal injury claims in the state where the alleged injury occurred." *Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1985); *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993)). The alleged injury in this case occurred in Illinois. "Illinois has a two-year statute of limitations for personal injury claims." *Kelly*, 4 F.3d at 511 (citing 735 ILCS § 5/13-202). Therefore, a two-year statute of limitations period applies to this case.

The defendants argue that because Reyes filed his complaint on December 14, 2009, any claim arising before December 14, 2007 is barred by the statute of limitations. *See* Doc. 35 at 9. In response, Reyes correctly points out that there is question of the statute of limitations was tolled (delayed) in some manner as to the remaining defendant, Ms. Schorn. *See* Doc. 51 at 7-8. Indeed, the applicable statute of limitations in suit brought pursuant to 42 U.S.C. § 1983 is tolled

while the inmate attempts to exhaust administrative remedies, as required by the Prison Litigation Reform Act. *See Johnson v. Rivera*, 272 F.3d 519, 522 (7th Cir. 2001).

As the Court summarized in Part II.A.2, *supra*, there are three fully exhausted grievances in this case alleging personal involvement by defendant Schorn.[2]  The grievance dated October 1, 2007 took 6 months and 0 days (10/16/2007 – 4/16/2008) to fully exhaust.  The grievance dated November 9, 2007 took 6 months and 29 days (11/15/2007 – 6/13/2008) to fully exhaust.  The grievance dated February 22, 2008 took 11 months and 6 days (3/3/2008 – 2/9/2009) to fully exhaust.  The first instance of alleged misconduct by defendant Schorn occurred on September 7, 2007. *See* Doc. 1-1 at 6.  As such, the latest date that Reyes could have filed a lawsuit that included the allegations of the three exhausted grievances against defendant Schorn is March 7, 2010.[3]  Reyes filed this lawsuit on December 14, 2009, so his claims against defendant Schorn are not barred by the statute of limitations.  Accordingly, it is recommended that the (Doc. 34) motion for summary judgment be denied as to defendant Schorn on the statute of limitations issue.

## C. Access to the Courts and Official Capacity Arguments

The defendants next argument is that Reyes has failed to support his claim that he was denied adequate access to the courts. *See* Doc. 35 at 9.  Reyes, however, asserts that there is no claim in this case for inadequate access to the courts. *See* Doc. 51 at 8.  Likewise, the Court has

---

[2] The Court need not address this issue as to defendants Ford and Walker because Reyes has failed to exhaust administrative remedies against them. *See* Part II.A.1.  However, it is also apparent that no tolling of the statute of limitations period occurred as to these two defendants because Reyes did not attempt to use the administrative process to resolve his claims against them.  Accordingly, defendants Ford and Walker are correct that Reyes' claims arising before December 14, 2007 are barred as to them.  The Court also agrees with defendant Ford and Walker's argument that they were not personally involved in any alleged retaliation against Reyes.  For the same reason, the Court need not address this issue.

[3] The grievance dated October 1, 2007 tolled the applicable statute of limitations by exactly six months.

examined the complaint and the initial screening order in this case and does not find a claim for inadequate law libraries or assistance from persons trained in the law. It is, therefore, recommended that the defendants' (Doc. 34) motion for summary judgment be denied as moot with respect to the access to the courts issue.

Similarly, it is recommended that the defendants' (Doc. 34) motion for summary judgment be denied as moot with respect to the official capacity issue. The defendant argues that the plaintiff's claims against the defendants in their official capacities are barred by the Eleventh Amendment. However, only defendant Randle, who was dismissed from this case on July 2, 2010, was sued in his official capacity for injunctive relief. *See* Doc. 1. Accordingly, the issue is moot as to the remaining defendants. The Court will now turn its attention to the merits of the First Amendment retaliation claim against defendant Schorn.

### D. <u>First Amendment Retaliation</u>

The defendants' fourth argument is that they did not retaliate against Reyes for filing grievances or any other document. In order to prevail on a First Amendment retaliation claim, a plaintiff must prove that (1) he or she engaged in activity protected by the First Amendment; (2) the protected activity was a but-for cause of the defendant's action; and (3) he or she suffered a deprivation because of the defendant's action. *See Gross v. Town of Cicero, Ill*., 619 F.3d 697, 704 (7th Cir. 2010) (citing *Kodish v. Oakbrook Terrace Fire Protection Dist*., 604 F.3d 490, 501 (7th Cir. 2010)). The parties do not argue about whether Reyes participated in protected First Amendment activity or whether Reyes suffered a deprivation because of the defendant's actions. Instead, the disagreement between the parties is whether defendant Schorn took part in any retaliatory activity. Therefore, the only element of the First Amendment retaliation claim at issue is the second element; causation.

Recent U.S. Supreme Court and Seventh Circuit case law has changed the causation element of a First Amendment retaliation claim formerly utilized in this Circuit. Formerly, courts in this Circuit followed the "motivating factor" test for causation where a plaintiff needed to show that the protected activity was a motivating factor in a defendants decision. *See Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008) (citing *Spiegla v. Hull*, 371 F.3d 928, 942 (7th Cir. 2004) (rejecting the "but-for" causation test)). Under the "but-for" causation test, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that [an illegal purpose] was the "but-for" cause of the [defendant's adverse action]." *Gross v. FBL Financial Services, Inc.*, 567 U.S. 167, ——, 129 S.Ct. 2343, 2351 (2009); *see also Kodish*, 604 F.3d at 501 (following the *Gross v. FBL Fin. Serv., Inc.* case); *Fairley v. Andrews*, 578 F.3d 518, 525–26 (7th Cir. 2009) (finding that the "motivating factor" test does not survive after the *Gross v. FBL Fin. Serv., Inc*. case).

In the Seventh Circuit, "the causation analysis for a § 1983 retaliation claim tracks the causation analysis for a Title VII retaliation claim." *Spiegla*, 371 F.3d at 943 n.10 (quoting *Johnson v. Univ. of Wis.-Eau Claire*, 70 F.3d 469, 482 (7th Cir. 1995). "A plaintiff in a Title VII case may offer either direct proof of sex-based discrimination or retaliation, or may use the burden-shifting approach established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Johnson*, 70 F.3d 469, 477 (7th Cir. 1995) (citing *King v. Board of Regents*, 898 F.2d 533, 537 (7th Cir. 1990). However, the Seventh Circuit, in *Kodish*, recently questioned whether the burden-shifting analysis survived the U.S. Supreme Court's decision in *Gross v. FBL Fin. Serv., Inc.*. *See Kodish*, 604 F.3d at 501 ("Whether such a burden shifting analysis survives the Supreme Court's declaration in Gross in

non-Title VII cases, remains to be seen."). The Court need not address this issue here because the

*Kodish* court also clarified what is meant by direct evidence of retaliation:

> Under the direct method, the plaintiff survives summary judgment if he
> can demonstrate "triable issues as to whether discrimination motivated the
> adverse employment action." *See Darchak v. City of Chicago Bd. of Educ.*, 580
> F.3d 622, 631 (7th Cir. 2009). The focus of the direct method of proof thus is not
> whether the evidence offered is itself "direct" or "circumstantial" but rather
> whether the evidence "points directly" to a discriminatory reason for the
> employer's action. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008). "Direct"
> proof of discrimination is not limited to near-admissions by the employer that its
> decisions were based on a proscribed criterion (e.g., "You're too old to work
> here."), but also includes circumstantial evidence which suggests discrimination
> through a longer chain of inferences." *Id*. at 671.

*Kodish*, 604 F.3d at 501.

The parties have submitted opposing affidavits attesting to their respective versions of the

facts regarding whether there was an illegal purpose (retaliation) for defendant Schorn's actions

in this case. In support of her position, defendant Schorn has offered her own sworn affidavit,

which is offered as proof that she did not retaliate against Reyes for any reason and had a valid,

non-retaliatory reason for every action that she took with respect to Reyes. *See* Doc. 35-1 at 65-

68. In support of his position, Reyes submits his own sworn affidavit and the affidavit of another

inmate, Bashir Omar. *See* Doc. 51 at 18-19, 21. In the affidavits, Reyes and Omar recall an

account of the events of September 7, 2007 where it is alleged that defendant Schorn berated

Reyes and threatened to withhold library services. Specifically, Omar recalls the events of

September 7, 2007 as follows:

> That on September 7, 2007, while at the Menard C.C. law library, I
> overheard a conversation between inmate Antonio Ryes, and a law library clerk
> named Larry.
> Inmate Reyes was complaining about being overcharged for some
> photocopies he did not need based on the misinformation given to him by the law
> clerk when Ms. Schorn started yelling at Reyes. She was telling him that he has
> plenty of money on the books so he shouldn't be complaining and how she was

13

only doing him a favor because of Larry.  She also said that she would not be
doing anything for Reyes on lockdowns if he did not have a direct court deadline.
         After she was done yelling at Reyes, she told him to go write his grievance
because all that is going to happen is that her and the counselor will talk about it
and that will be the end of it.

Doc. 51 at 21.  If this recollection of events is to be believed, a reasonable juror could conclude

that defendant Schorn acted with an illegal (retaliatory) purpose with regard to Reyes after the

threat to withhold library services was made.  According to Reyes, adverse actions were taken by

defendant Schorn with respect to his protected activity after the threat was made on September 7,

2007.  Taken together, these facts form a chain of inferences that could reasonably lead the trier

of fact to find for Reyes.  Defendant Schorn's affidavit does not recall the events in the same

manner, but the Court may not choose which side to believe at this stage in the litigation.  *See*

*Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the

drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether

he is ruling on a motion for summary judgment or for a directed verdict").  At this juncture, the

plaintiff only needs to demonstrate that a genuine issue of material fact exists for trial as to the

merits of the retaliation claim. *See* FED. R. CIV. P. 56(a).  The affidavits submitted by Reyes and

Omar, as well as the deposition transcript submitted by the defendants, are sufficient to

demonstrate that such an issue of fact exists.[4]  Accordingly, it is recommended that the (Doc. 34)

motion for summary judgment be denied as to defendant Schorn on the merits of Reyes' First

Amendment Retaliation claim.

---

     [4] The defendants' reply to Reyes' response to the motion for summary judgment
complains that Reyes and Omar did not notarize their affidavits. *See* Doc. 52.  However, the
absence of the notary does not invalidate the affidavits.  Both Reyes and Omar swore to their
statements under penalty of perjury as required by 28 U.S.C. § 1746.

### E. **Qualified Immunity**

Finally, the parties disagree as to whether defendant Schorn is entitled to qualified immunity in this case. In order to defeat the defense of qualified immunity, Reyes will need to demonstrate that "(1) that defendant Schorn's conduct violated his constitutional rights, and (2) that the violated right was clearly established at the time of the alleged misconduct." *Lewis v. Downey*, 581 F.3d 467, 478 (citing *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003)). Here, the Court has already determined that a genuine issue of material exists for trial as to whether defendant Schorn violated Reyes' constitutional rights. Thus, the Court will proceed to the second part of the inquiry. *See id.* (citing *Hill v. Shelander*, 992 F.2d 714, 717-18 (7th Cir. 1993)).

The second part of the qualified immunity inquiry is a question of law. *See id.* (citing *Marshall v. Allen*, 984 F.2d 787, 793 (7th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985))). In order to defeat this part of the inquiry, the right that was allegedly violated must be clearly established "in a particularized sense." *See id.* (quotations and citations omitted). The complete question is "whether, operating under the state of the law as it existed at the time of relevant events, a reasonable officer would have known that the particular action at issue was unlawful." *See id.* at 479 (citing *Juriss v. McGowan*, 957 F.2d 345, 350 (7th Cir.1992); *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (stating that the contours of a constitutional right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right" (quotations omitted)); *Hill*, 992 F.2d at 718).

Defendant Schorn indicates that she "know[s] of no case law that would put [her] on notice that following an institutional policy regarding who is granted access to the law library can constitute retaliation." Doc. 35 at 18. The plaintiff bears the burden of establishing the existence of a clearly established constitutional right with respect to the qualified immunity defense. *Delgado v. Jones*, 282 F.3d 511, 516 (7th Cir. 2002) (citations omitted). Reyes comes forward with a case, *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), which he believes is conclusive on the qualified immunity question. In *Babcock*, the Seventh Circuit Court of Appeals found for the plaintiff on the qualified immunity question when prison officials allegedly kept the plaintiff in administrative segregation for ten months in retaliation for the plaintiff requesting transfer to another prison for reasons of personal safety. *See Babcock*, 102 F.3d at 276. In reaching its conclusion, the *Babcock* court stated:

> "… retaliation against constitutionally protected conduct is actionable regardless of whether the defendant's actions independently violate the constitution. A prison official in [the defendant's] position therefore would have been on notice that any retaliation, whatever its shape, could give rise to liability."

*Id*. Here, the Court has determined that reasonable juror could conclude that defendant Schorn retaliated against Reyes for exercising his protected activity. Because there is at least some evidence of retaliation at this point in the litigation, the Court cannot rule in favor of defendant Schorn on the qualified immunity question at this time. Therefore, it is recommended that the (Doc. 34) motion for summary judgment be denied as to defendant Schorn on the qualified immunity issue.

**F.  Recommendation**

It is recommended that the defendants' (Doc. 34) motion for summary judgment be

**granted, in part, and denied, in part**.  It is further recommended that the defendants' (Doc. 34)

motion for summary judgment be:

1) Granted as to defendants Ford and Walker on the exhaustion of administrative remedies issue;
2) Denied as moot as to defendants Ford and Walker on the remaining issues;
3) Denied as to defendant Schorn on the exhaustion of administrative remedies issue;
4) Denied as to defendant Schorn on the statute of limitations issue;
5) Denied as moot as to defendant Schorn on the access to the courts issue;
6) Denied as moot as to defendant Schorn on the official capacity issue;
7) Denied as to defendant Schorn on the retaliation issue; and
8) Denied as to defendant Schorn on the qualified immunity issue.

It is further recommended that defendants Ford and Walker be dismissed from this case

with prejudice.  If this recommendation is adopted in its entirety, a First Amendment retaliation

claim against defendant Schorn will remain.

**SO RECOMMENDED.**

**DATED: December 1, 2011.**


*/s/ Philip M. Frazier*
PHILIP M. FRAZIER
UNITED STATES MAGISTRATE JUDGE